## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY<br>NATIONWIDE MUTUAL FIRE INSURANCE<br>COMPANY<br>AMCO INSURANCE COMPANY<br>DEPOSITORS INSURANCE COMPANY<br>HARLEYSVILLE INSURANCE COMPANY<br>HARLEYSVILLE PREFERRED INSURANCE<br>COMPANY<br>NATIONWIDE AFFINITY INSURANCE COMPANY<br>OF AMERICA<br>NATIONWIDE AGRIBUSINESS INSURANCE<br>COMPANY<br>NATIONWIDE INSURANCE COMPANY OF<br>AMERICA<br>NATIONWIDE ASSURANCE COMPANY<br>NATIONWIDE PROPERTY & CASUALTY<br>INSURANCE COMPANY<br>TITAN INDEMNITY COMPANY<br>VICTORIA AUTOMOBILE INSURANCE COMPANY<br>VICTORIA FIRE & CASUALTY COMPANY<br><br>vs.<br><br>ELECTROSTIM MEDICAL SERVICES, INC. and<br>MARIO GARCIA, JR. | **CIVIL ACTION**<br><br>**No.**<br><br><br>**JURY TRIAL**<br>**DEMANDED** |

## COMPLAINT

Plaintiffs, Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance

Company, AMCO Insurance Company, Depositors Insurance Company, Harleysville Insurance

Company, Harleysville Preferred Insurance Company, Nationwide Affinity Insurance Company

of America, Nationwide Agribusiness Insurance Company, Nationwide Insurance Company of

America, Nationwide Assurance Company, Nationwide Property & Casualty Insurance

Company, Titan Indemnity Company, Victoria Automobile Insurance Company, Victoria Fire &

Casualty Company, (hereinafter referred to as "Nationwide"), by and through their attorneys,

Marshall, Dennehey, Warner, Coleman & Goggin, brings this action against the Defendants,

Electrostim Medical Services, Inc. and Mario Garcia, Jr. and allege violations of the Pennsylvania Insurance Fraud Statute along with claims for fraud, unjust enrichment and restitution for mistaken payment. In support of their claims, Plaintiffs aver as follows:

**INTRODUCTION**

1.     This case involves a scheme to defraud Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, AMCO Insurance Company, Depositors Insurance Company, Harleysville Insurance Company, Harleysville Preferred Insurance Company, Nationwide Affinity Insurance Company of America, Nationwide Agribusiness Insurance Company, Nationwide Insurance Company of America, Nationwide Assurance Company, Nationwide Property & Casualty Insurance Company, Titan Indemnity Company, Victoria Automobile Insurance Company, Victoria Fire & Casualty Company, out of money through the submissions of fraudulent insurance claims in Pennsylvania which were and continue to be based upon erroneous CPT Codes, invalid and fraudulent DME orders, automatic provision of supplies, billing for services which are considered not compensable, engaging in billing for dispensing items which were not dispensed, dispensing DME which was not ordered by a physician, material misrepresenting the services provided and inducing payment, and intentionally charging more than the usual and customary charges authorized by statute in Pennsylvania.

**THE PARTIES**

2.     Nationwide Mutual Insurance Company is an Ohio corporation with its principal place of business in Ohio; Nationwide Mutual Fire Insurance Company is an Ohio corporation with its principal place of business in Ohio; AMCO Insurance Company is an Iowa corporation with its principal place of business in Iowa; Depositors Insurance Company is an Iowa corporation with its principal place of business in Iowa; Harleysville Insurance Company is an Ohio corporation with its principal place of business in Pennsylvania; Harleysville Preferred

Insurance Company is an Ohio corporation with its principal place of business in Pennsylvania; Nationwide Affinity Insurance Company of America is an Ohio corporation with its principal place of business in Ohio; Nationwide Agribusiness Insurance Company is an Iowa corporation with its principal place of business in Iowa; Nationwide Insurance Company of America is an Ohio corporation with its principal place of business in Ohio; Nationwide Assurance Company is an Ohio corporation with its principal place of business in Ohio; Nationwide Property & Casualty Insurance Company is an Ohio corporation with its principal place of business in Ohio; Titan Indemnity Company is a Texas corporation with its principal place of business in Ohio; Victoria Automobile Insurance Company is an Ohio corporation with its principal place of business in Ohio; and Victoria Fire & Casualty Company is an Ohio corporation with its principal place of business in Ohio. Plaintiffs are duly organized and licensed to engage in the issuance of automobile insurance policies in the Commonwealth of Pennsylvania. Plaintiffs provide insurance coverage to their customers in Pennsylvania for, inter alia, medical payments, uninsured motorist benefits, underinsured motorists benefits, and liability for bodily injury arising out of automobile accidents.

3.      Upon information and belief, Electrostim Medical Services, Inc. is a foreign business corporation incorporated in the State of Florida, authorized to conduct business in the State of Pennsylvania. Electrostim's principal place of business is at address 3504 Cragmont Drive, Suite 100, Tampa, Florida 33619. Electrostim's registered agent is Mario Garcia, Jr. located at 3605 Cragmont Drive, Suite 100, Tampa, Florida 33619 and at 628 Balibay Road, Apollo Beach, Florida 33572.

4.      The Defendant, Mario Garcia, Jr., during the relevant period, was and is the proprietor, owner, officer, employee, agent, and/or shareholder of Electrostim and Electrostim

was operated and controlled by Defendant, Mario Garcia, Jr. Electrostim provided equipment, notably Durable Medical Equipment or DMEs to claimants and insureds of the Plaintiff.

5.      Upon information and belief, Mario Garcia, Jr., is a citizen in the State of Florida. Mario Garcia, Jr. is not known to be licensed to practice any healthcare profession by the State of Florida, New York or Pennsylvania.  Mario Garcia, Jr. is the CEO and presumed owner of Electrostim.  Mario Garcia, Jr.'s address in Florida is listed in averment 3 above.

**VENUE AND JURISDICTION**

6.      This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332, based upon the diverse citizenship of the parties and the amount in controversy which exceeds $75,000 exclusive of interest and costs.

7.      This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1367 based upon the pendent and ancillary jurisdiction of this Court.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district.

**FACTS**

9.      This Complaint is brought by Plaintiffs to recover damages from Defendants, Electrostim Medical Services, Inc. and Mario Garcia, Jr., who defrauded Nationwide by doing acts, including but not limited to, submitting false, misleading, inaccurate, and fabricated bills and other documents that were intended and continued to be intended, to induce payment from Nationwide, for medical equipment distributed and provided to Nationwide policy holders or claimants in the Commonwealth of Pennsylvania.

10.      As part of the scheme to defraud, rather than properly assess patients and provide necessary and individualized treatment according to the proper standard of care, patients were

4

placed on a standard and pre-determined DME treatment plan established and implemented by the Defendants.  Treatment was not provided for the medical benefit of the patients.

11.     The scheme was implemented by the Defendants for the personal financial benefit of the Defendants.

12.     The medical records of the Defendants were intended and continue to be intended to generate payment and adduce payments from the Plaintiff.

13.     The scheme was also implemented by the Defendants to support past and future billing for durable medical equipment (hereinafter referred to as "DME") to support patients uninsured, underinsured and bodily injury claims, and to falsify, exaggerate, magnify and misstate the purported injuries of the patients of the Defendants.

14.     It is further part of the scheme to defraud that many of the documented DME was not provided for the medical necessity or the medical benefit of the patient.

15.     It was part of the scheme to defraud that many of the medical supplies were not provided as documented while others were routinely dispensed without proper order by a medical physician.

16.     All of the relevant acts by the Defendants were in connection with Nationwide's Pennsylvania insured's, claimants or policyholders.

17.     It was part of the scheme for Defendants to unbundle CPT codes and thus double bill for DME in order to increase its reimbursement from the Plaintiff.

18.     It was part of the scheme for Defendants to abuse CPT code E1399, and various others, in order to increase its reimbursement from the Plaintiff.

19.     It was also part of the scheme to defraud that many of the durable medical equipment services provided were routinely renewed despite the lack of medical documentation supporting the continued need for DME.

5

20.     Likewise, it was also part of the scheme to defraud whereby the DME was ordered by the Defendants without evidence of a face to face encounter with a treating physician.

21.     It was further part of the scheme to defraud that the medical DME provided was excessive, inappropriate and represents significant and gross and intentional deviation from accepted standards of care which were not reimbursable under applicable law and not provided pursuant to applicable law.

22.     It was further part of the scheme to defraud that the Defendants prepared and continued to prepare, records and bills listing false, non-existent, misleading and exaggerated need for DME.

23.     The medical bills submitted by the Defendants described herein contain misrepresentations intended to extract payments from Plaintiffs in violation of 75 Pa.C.S.A. § 1701 et. seq. and other applicable Pennsylvania law.

24.     The Defendants submitted invoices for medical equipment and were required to comply with the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. Cons. Stat. §§ 1701 et seq. (hereafter "MVFRL").

25.     The MVFRL distinguishes between prices listed on the Medicare Fee Schedule for treatments and products, and those that are not listed.  For those treatments and products not listed on the Medicare fee schedule, Section 1797(a) states that the amount of the payment may not exceed 80% of the provider's usual and customary charge.  75 Pa. Con. Stat. § 1797 (a).  The medical equipment provided and invoiced by Defendants are not included on the Medicare fee schedule and are therefore unlisted and subject to the 80% limit.

26.     Defendants fraudulently and intentionally did not charge the "usual and customary charge" when billing for durable medical equipment.

6

27.     Under the MVFRL, the Defendants may not charge an insurance company more than 80% of the usual and customary charge.

28.     Plaintiffs has paid amounts in excess of the usual and customary charges authorized by the MVFRL.

29.     Plaintiffs made payments to Defendants by way of reasonable reliance and in belief of the accuracy of the medical records created and submitted by Defendants.  As such, Plaintiffs' seek to recover all of these payments and expended sums as compensatory damages.

30.     The Defendants sent the false, fabricated, misleading, and inaccurate medical bills to various individuals, including personal injury attorneys, defense attorneys and insurance companies including the Plaintiffs.

31.     In connection with the activities of the Defendants giving rise to this action, the Defendants acted with malice, intent and knowledge.  The Defendants knew that the medical bills were false and that the false medical bills were relied upon the Plaintiffs when making payment decisions.

32.     It was a further part of the scheme to defraud that many of the medical bills, invoices and letters of medical necessity were provided to the Plaintiffs, the examples listed in paragraph 30 were not provided for the medical necessity or medical benefit to the patient.

33.     At all times relevant hereto, Defendants knew, or should have known, that Plaintiffs were relying on the truth and accuracy of Defendants medical bills in determining amounts payable.

34.     Due to the concerted effort of the Defendants to conceal the fraudulent activities, Plaintiffs did not discover their injury and the source of their injury, despite the exercise of reasonable diligence, until recently.

7

35.     Plaintiffs' exercise of reasonable diligence included, but is not limited to, the employment of claim representatives to review and evaluate claims, which included but was not limited to, the review of the medical bills submitted by the Defendants.

36.     Plaintiffs were injured in their business and property by Defendants' misrepresentations, violations of law, fraudulent conduct and other acts and omissions committed by the Defendants as set forth hereto.  Such injuries include: the loss of monies paid pursuant to and/or the result of false, fraudulent, inflated, and/or misrepresented medical bills.

37.     The following are examples of the Defendants' false, misleading, inaccurate and fabricated medical records, invoices and medical bills which were submitted by the Defendants to the Plaintiffs.

        a.      Patient BH[1].  The medical records, invoices, bills, were false, misleading, exaggerated, by the Defendants and unrequested DME. The medical records, bills and invoices from Defendants in regard to patient BH were intentionally miscoded and DMEs, if supplied, were supplied without medical documentation and authorization from the treating physician. Additionally, unnecessary re-supply items were also billed in a misleading and exaggerated manner.

        b.      Patient BH.  The medical records, invoices, bills, were false, misleading, exaggerated, by the Defendants and unrequested DME. The medical records, bills and invoices from Defendants in regard to patient BH were intentionally miscoded and DMEs, if supplied, were supplied without medical documentation and authorization from the treating physician. Additionally, unnecessary re-supply items were also billed in a misleading and exaggerated manner.

---

[1] In order to protect the privacy of the patients of the Defendants, they have been identified by initials.  The names of the patients will be provided to the Defendants upon request after the execution of a satisfactory agreement to protect the privacy of the patients.

      c.      Patient TM. The medical records, invoices, bills, were false, misleading, exaggerated, by the Defendants and unrequested DME. The medical records, bills and invoices from Defendants in regard to patient TM were intentionally miscoded and DMEs, if supplied, were supplied without medical documentation and authorization from the treating physician. Additionally, unnecessary re-supply items were also billed in a misleading and exaggerated manner.

      d.      Patient PH. The medical records, invoices, bills, were false, misleading, exaggerated, by the Defendants and unrequested DME. The medical records, bills and invoices from Defendants in regard to patient PH were intentionally miscoded and DMEs, if supplied, were supplied without medical documentation and authorization from the treating physician. Additionally, unnecessary re-supply items were also billed in a misleading and exaggerated manner.

      e.      Patient SS.    The medical records, invoices, bills, were false, misleading, exaggerated, by the Defendants and unrequested DME. The medical records, bills and invoices from Defendants in regard to patient SS were intentionally miscoded and DMEs, if supplied, were supplied without medical documentation and authorization from the treating physician. Additionally, unnecessary re-supply items were also billed in a misleading and exaggerated manner.

     38.     In order to secure payments from the Plaintiffs, the Defendants issued bills and invoices including certain current procedural terminology hereinafter "CPT codes", to document the nature of service.  Plaintiffs reasonably relied upon the representations set forth in the Defendant's medical records to form payment decisions.

39.     Defendants collected and retained the proceeds paid by Plaintiffs for DMEs purportedly provided by the Defendants and billed for by the Defendants, their agents or employees.

40.     From at least the year 2013 to the present, Defendants issued or caused to be issued medical records, invoices, forms and letters of medical necessity for the distribution of DMEs, which were fraudulent, exaggerated and improper and which were submitted to the Plaintiffs in support of their bills.

41.     From at least the year 2013 to the present, Plaintiffs have paid over $186,060.01 to Defendants and Plaintiffs seek to recover all payments as compensatory damages in this case. Plaintiffs also seeks as damages monies paid and costs incurred and claims for uninsured motorist benefits, underinsured motorist benefits and claims for bodily injury in an amount to be determined, along with damages described throughout this Complaint and available pursuant to the causes of action described herein.  Plaintiffs also seek to recover their cost of suit and attorneys' fees as well as treble damages as Defendants have engaged in a pattern of statutory insurance fraud.  Plaintiffs expect damages to continue to accrue through the course of this litigation.

42.     The medical records submitted by the Defendants described herein contain misrepresentations intended to extract payments from Plaintiffs in violation of 75 Pa. C.S.A. §1701, et. seq. and other applicable Pennsylvania law.

43.     It was a further part of the scheme that the Defendants fraudulently concealed their involvement in the scheme and concealed the scheme as described in this Complaint. During the relevant times, in connection with the activities of the Defendants giving rise to this action, Defendants intentionally acted to fraudulently conceal the nature of their activities in order to insulate themselves from liability for the fraudulent and illegal activities they were

10

undertaking, including, but not limited to, preparing medical records, bills, invoices, letters of medical necessity in a manner that a reasonable insurance company would believe that DMEs that were provided or alleged to be provided, were provided for the medical benefit of the patient, was medically necessary and was provided by the provider identified in the records; by removing and/or altering documentation before providing such files to the Plaintiffs.

44.    The relief sought by Plaintiffs against Defendants includes compensatory damages, payments made by Plaintiffs to Defendants and individuals allegedly treated by Defendants, punitive damages, treble damages pursuant to 18 Pa C.S.A. § 4117(g), costs of suit, interests and attorneys fees and all other relief that this Court finds just and equitable and warranted by applicable law.

## COUNT 1

### Fraud Against All Defendants

45.    Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 44 of this Complaint.

46.    The Defendants submitted invoices for medical equipment and were required to comply with the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. Cons. Stat. §§ 1701 et seq. (hereafter "MVFRL").

47.    The MVFRL distinguishes between prices listed on the Medicare Fee Schedule for treatments and products, and those that are not listed.  For those treatments and products not listed on the Medicare fee schedule, Section 1797(a) states that the amount of the payment may not exceed 80% of the provider's usual and customary charge.  75 Pa. Con. Stat. § 1797 (a).  The medical equipment provided and invoiced by Defendants are not included on the Medicare fee schedule and are therefore unlisted and subject to the 80% limit.

48.    Defendants fraudulently and intentionally did not charge the "usual and customary charge" when billing for durable medical equipment.

49.    Under the MVFRL, the Defendants may not charge an insurance company more than 80% of the usual and customary charge.

50.    Plaintiffs has paid amounts in excess of the usual and customary charges authorized by the MVFRL.

51.    Plaintiffs made payments to Defendants by way of reasonable reliance and in belief of the accuracy of the medical records created and submitted by Defendants. As such, Plaintiffs' seek to recover all of these payments and expended sums as compensatory damages.

52.    The Defendants sent the false, fabricated, misleading, and inaccurate medical bills to various individuals, including personal injury attorneys, defense attorneys and insurance companies including the Plaintiffs.

53.    The representations, violations of law, fraudulent conduct and other acts and omissions committed by the Defendants as set forth above, constitute false and fraudulent representations.

54.    Defendants intended that Plaintiffs would be induced by such false and fraudulent representations to provide payment to Defendants for medical services allegedly provided to individuals making claims with the Plaintiffs arising out of motor vehicle accidents.

55.    Plaintiffs and others justifiably relied on these representations made by the Defendants in making payments to Defendants and others in belief that the medical billing, as reflected in their documentation, was accurate, medically necessary, reimbursable under applicable law, and provided in accordance with applicable law, and that the records reflect a true medical conditions, complaints and injuries.

56.     As a result of the false and fraudulent representations by Defendants, Plaintiffs suffered injury in Pennsylvania as set forth above and described throughout this Complaint. Plaintiffs have been harmed by Defendants' billing misrepresentations and paid for services that Defendants were not otherwise entitled to payment for.

57.     The false and fraudulent representations by Defendants were made with malice, vindictiveness and wanton disregard for the rights of Plaintiffs.

WHEREFORE, Plaintiffs pray this Court enter Judgment in favor of the Plaintiffs and against all Defendants, jointly and severally, for an amount exceeding $150,000, for compensatory damages, consequential damages, treble damages, punitive damages, attorneys fees, litigation expenses and any and all other additional relief this Court finds just and equitable and warranted by applicable law.

## COUNT II
### Statutory Insurance Fraud
### Violations of 18 Pa.C.S. § 4117 et seq.
### Against All Defendants

58.     Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 57 of this Complaint.

59.     The Defendants submitted invoices for medical equipment and were required to comply with the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. Cons. Stat. §§ 1701 et seq. (hereafter "MVFRL").

60.     The MVFRL distinguishes between prices listed on the Medicare Fee Schedule for treatments and products, and those that are not listed.  For those treatments and products not listed on the Medicare fee schedule, Section 1797(a) states that the amount of the payment may not exceed 80% of the provider's usual and customary charge. 75 Pa. Con. Stat. § 1797 (a).  The

medical equipment provided and invoiced by Defendants are not included on the Medicare fee schedule and are therefore unlisted and subject to the 80% limit.

61.     Defendants fraudulently and intentionally did not charge the "usual and customary charge" when billing for durable medical equipment.

62.     Under the MVFRL, the Defendants may not charge an insurance company more than 80% of the usual and customary charge.

63.     Plaintiffs has paid amounts in excess of the usual and customary charges authorized by the MVFRL.

64.     Plaintiffs made payments to Defendants by way of reasonable reliance and in belief of the accuracy of the medical records created and submitted by Defendants.  As such, Plaintiffs' seek to recover all of these payments and expended sums as compensatory damages.

65.     The Defendants sent the false, fabricated, misleading, and inaccurate medical bills to various individuals, including personal injury attorneys, defense attorneys and insurance companies including the Plaintiffs.

66.     Plaintiffs are an "insurer" and an "insurance company" within the meaning of 18 Pa.C.S. § 4117 et seq.

67.     Each Defendant is a "person" within the meaning of 18 Pa.C.S. § 4117 et seq.

68.     The medical records including reports, bills, and other records and documents produced by Defendants are "statements" within the meaning of 18 Pa.C.S. § 4117 et seq.

69.     Each Defendant has acted in violation of 18 Pa.C.S. § 4117(a)(2), through the acts set forth above in paragraphs 9 through 57, by presenting or causing to be presented to Plaintiffs statements forming a part of, or in support of, insurance claims which set forth false, fraudulent, incomplete and misleading information concerning facts material to such insurance claims.

14

70.     Each Defendant has acted in violation of 18 Pa.C.S. § 4117(a)(3), through the acts set forth above in paragraphs 9 through 57, by knowingly and with an intent to defraud Plaintiffs, assisting, abetting, soliciting and/or conspiring with others to prepare statements that were intended to be presented to Plaintiffs in connection with, or in support of, insurance claims that set forth false, fraudulent, incomplete, and misleading information concerning facts material to such insurance claims.

71.     Each Defendant has acted in violation of 18 Pa.C.S. § 4117(a)(5) by knowingly benefiting, directly and indirectly, from the proceeds derived from violations of the provisions of 18 Pa.C.S. § 4117(a)(2) due to the assistance, conspiracy and urging of other persons, including the other Defendants.

72.     Each Defendant has acted in violation of 18 Pa.C.S. § 4117(a)(5) by knowingly benefiting, directly and indirectly, from the proceeds derived from violations of the provisions of 18 Pa.C.S. § 4117(a)(3) as set forth above due to the assistance, conspiracy and urging of other persons, including the other Defendants.

73.     Each Defendant is the owner, administrator or employee of a health care facility within the meaning of 18 Pa.C.S. § 4117(a)(6).

74.     Each Defendant has acted in violation of 18 Pa.C.S. § 4117(a)(6) by knowingly allowing the use of a health care facility by other persons, including the other Defendants, in furtherance of the scheme and conspiracy to violate the provisions of 18 Pa.C.S. § 4117(a)(2) and (a)(3), as set forth above.

75.     These acts of fraud described above  in Pennsylvania were both related and continuous, thereby constituting a pattern of fraud under 18 Pa.C.S. § 4117(g).

76.     Plaintiffs were injured by the conduct of Defendants as set forth above in paragraphs 9 through 57 and described throughout this Complaint.

WHEREFORE, Plaintiffs pray this Court enter Judgment in favor of the Plaintiffs and against all Defendants, jointly and severally, for an amount exceeding $150,000, for compensatory damages, consequential damages, treble damages, punitive damages, attorneys fees, litigation expenses and any and all other additional relief this Court finds just and equitable and warranted by applicable law.

### COUNT III
### Unjust Enrichment Against All Defendants

77.     Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 76 of this Complaint.

78.     The Defendants submitted invoices for medical equipment and were required to comply with the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. Cons. Stat. §§ 1701 et seq. (hereafter "MVFRL").

79.     The MVFRL distinguishes between prices listed on the Medicare Fee Schedule for treatments and products, and those that are not listed.  For those treatments and products not listed on the Medicare fee schedule, Section 1797(a) states that the amount of the payment may not exceed 80% of the provider's usual and customary charge.  75 Pa. Con. Stat. § 1797 (a).  The medical equipment provided and invoiced by Defendants are not included on the Medicare fee schedule and are therefore unlisted and subject to the 80% limit.

80.     Defendants fraudulently and intentionally did not charge the "usual and customary charge" when billing for durable medical equipment.

81.     Under the MVFRL, the Defendants may not charge an insurance company more than 80% of the usual and customary charge.

16

82.     Plaintiffs has paid amounts in excess of the usual and customary charges authorized by the MVFRL.

83.     Plaintiffs made payments to Defendants by way of reasonable reliance and in belief of the accuracy of the medical records created and submitted by Defendants.  As such, Plaintiffs' seek to recover all of these payments and expended sums as compensatory damages.

84.     The Defendants sent the false, fabricated, misleading, and inaccurate medical bills to various individuals, including personal injury attorneys, defense attorneys and insurance companies including the Plaintiffs.

85.     Defendants' retention of amounts paid by Plaintiffs was wrongful because these monies were obtained as a direct result of fraud and other wrongful acts set forth in this Complaint.

86.     Plaintiffs have been harmed by Defendants' acts in wrongfully obtaining and retaining these monies because Plaintiffs would not have paid Defendants' bills if they had known at the time they paid these claims that Defendants' acts were wrongful, fraudulent and illegal.

87.     Defendants' retention of these payments violates fundamental principles of justice, equity and good conscience.

88.     Additionally, Defendants' retention of money received from Plaintiffs due to Defendants' fraudulent and wrongful practices in Pennsylvania, as described in this Complaint, is wrong and unjust.

89.     Plaintiffs have been harmed by Defendants' billing misrepresentations and paid for services that Defendants were not otherwise entitled to payment for.

90.     Defendants have been unjustly enriched, and to allow Defendants to retain these amounts would violate fundamental principles of justice, fairness, equity and good conscience.

17

WHEREFORE, Plaintiffs pray this Court enter Judgment in favor of the Plaintiffs and against all Defendants, jointly and severally, for an amount exceeding $150,000, for compensatory damages, consequential damages, treble damages, punitive damages, attorneys fees, litigation expenses and any and all other additional relief this Court finds just and equitable and warranted by applicable law.

### COUNT IV
### Restitution for Mistaken Payment Against All Defendants

91.     Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 90 of this Complaint.

92.     The Defendants submitted invoices for medical equipment and were required to comply with the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. Cons. Stat. §§ 1701 et seq. (hereafter "MVFRL").

93.     The MVFRL distinguishes between prices listed on the Medicare Fee Schedule for treatments and products, and those that are not listed. For those treatments and products not listed on the Medicare fee schedule, Section 1797(a) states that the amount of the payment may not exceed 80% of the provider's usual and customary charge. 75 Pa. Con. Stat. § 1797 (a). The medical equipment provided and invoiced by Defendants are not included on the Medicare fee schedule and are therefore unlisted and subject to the 80% limit.

94.     Defendants fraudulently and intentionally did not charge the "usual and customary charge" when billing for durable medical equipment.

95.     Under the MVFRL, the Defendants may not charge an insurance company more than 80% of the usual and customary charge.

96.     Plaintiffs has paid amounts in excess of the usual and customary charges authorized by the MVFRL.

97.     Plaintiffs made payments to Defendants by way of reasonable reliance and in belief of the accuracy of the medical records created and submitted by Defendants.  As such, Plaintiffs' seek to recover all of these payments and expended sums as compensatory damages.

98.     The Defendants sent the false, fabricated, misleading, and inaccurate medical bills to various individuals, including personal injury attorneys, defense attorneys and insurance companies including the Plaintiffs.

99.     When Plaintiffs paid monies on medical payments, uninsured motorist, underinsured motorist and bodily injury claims based on documentation provided by Defendants, it did so under a mistaken factual belief.

100.    This belief was mistaken because the medical records submitted to Plaintiffs were false, misleading, inaccurate and fraudulent and the documented medical treatment, including, but not limited to examination, modalities, testing, consultations, equipment, and services purportedly provided by Defendants was not provided, was not provided for the medical necessity or medical benefit to the patient, was misrepresented, was excessive, was unbundled, was inappropriate and represent significant and intentional deviations from accepted standards of care, was not reimbursable under applicable law and was not provided pursuant to applicable law.

101.    If Plaintiffs had known the facts set forth in the preceding paragraphs, it would not have paid Defendants.

102.    Plaintiffs are entitled to recover from Defendants, each of who have been unjustly enriched, in an amount equal to the portions of the payments Plaintiffs made.

WHEREFORE, Plaintiffs pray this Court enter Judgment in favor of the Plaintiffs and against all Defendants, jointly and severally, for an amount exceeding $150,000, for compensatory damages, consequential damages, treble damages, punitive damages, attorneys

fees, litigation expenses and any and all other additional relief this Court finds just and equitable and warranted by applicable law.

Respectfully submitted,

MARSHALL DENNEHEY WARNER,
COLEMAN & GOGGIN

By:_____

EDWARD J. TUITE, ESQUIRE
Attorney for Plaintiffs
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406
610-354-8250
Fax:  610-354-8299
ejtuite@mdwcg.com

Dated:  April 4, 2018